STATE OF NEBRASKA, APPELLEE, V.
TRAVIS W. DUPSKY, APPELLANT.
635 N.W.2d 539

Filed November 20, 2001.   No. A-01-317.

David E. Copple and Jim K. McGough, of Copple & Rockey, P.C., for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HANNON, SIEVERS, and MOORE, Judges.

SIEVERS, Judge.

As a result of a plea bargain, Travis W. Dupsky pled no contest to one count of first degree sexual assault, a Class II felony, and was sentenced by the district court for Red Willow County to 12 to 15 years' imprisonment. Dupsky, a 33-year-old married man, was charged with sexually assaulting his stepdaughter. She said that this occurred from the time she was about 12 years old until November 2000, when she was 15 years old, and that the assaults often included penetration.

Dupsky appeals, assigning as error that the trial court failed to completely and properly advise him of his constitutional and statutory rights as required by *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). He also contends that the sentence was excessive. Because this case involves a plea, under our rules, we decide the case without oral argument. The matter has been briefed and is now ready for decision.

Dupsky contends that he was not advised of his right against self-incrimination before he entered his plea of no contest. At 10:35 p.m. (we assume that this is a court reporter's mistake and that the time was actually a.m.) on December 20, 2000, the trial court conducted an arraignment of a defendant named "John C. Jensen, Jr.," who was represented by counsel. Jensen had numerous charges against him. At the beginning of the arraignment, the court told Jensen that under the Fifth Amendment to the U.S. Constitution, he could not be compelled to give evidence against himself, but that the court was going to ask him questions which the court expected Jensen to answer unless he claimed his privilege. The court then asked Jensen if he understood, and he responded affirmatively.

After Jensen was advised of the charges against him and the penalties, the court proceeded to advise him of "certain constitutional and statutory rights." Jensen was told that these rights

included a trial by a jury of 12 people who would listen to the evidence; that he would have the presumption of innocence which would only be overcome when the jury was convinced unanimously beyond a reasonable doubt that he was guilty; and that he had a right to confront witnesses who testified against him, to present his own evidence, to have his attorney cross-examine witnesses, and to have witnesses subpoenaed. Jensen was asked if he understood that if he entered a plea of guilty or no contest, he would be "giving up" those rights. Within the court's litany of rights, no mention was made of self-incrimination.

Then at 10:55 a.m. on the same day, the county attorney arraigned Dupsky, who was represented by the same counsel for Jensen. Dupsky was advised by the court at the very beginning of the procedure that under the Fifth Amendment, "you cannot be compelled to give evidence against yourself. The purpose of today's hearing is an arraignment. I'm going to ask you some questions, and I expect you'll answer them unless you claim your privilege not to; do you understand that?" Dupsky answered in the affirmative, and the arraignment proceeded with advisement as to the nature of the crime, a Class II felony, which the court said was generally called statutory rape, subject to a maximum of 50 years' imprisonment. The court then asked, "Mr. Dupsky, were you present when I explained to Mr. Jensen the various constitutional and statutory rights that he has?" Dupsky responded, "Yes, Your Honor." The court asked, "Were you able to hear those?" Dupsky responded, "Yes, Your Honor." At this point, the county attorney interjected that the sentence could be enhanced if there were subsequent convictions, plus there was the "whole business of the sex offender registration." The court told the county attorney, "Yes, we'll go through that," and the court then proceeded:

THE COURT: Thank you. Thank you, [county attorney]. You were able to hear the constitutional and statutory rights?

[Dupsky]: Yes, Your Honor.

THE COURT: You understand that those apply to you also?

[Dupsky]: Yes, Your Honor.

THE COURT: You understand that if you enter a plea of guilty today, or no contest, you're going to give up those rights?

[Dupsky]: Yes, Your Honor.

The court then explained the penalty and that a second offense of statutory rape or first degree sexual assault required a minimum of 25 years' imprisonment, with no possibility of probation. The court also explained the sex offender statute and registration. After the plea bargain, which we earlier mentioned was detailed, a plea of no contest was entered. A factual basis was recited, which we need not repeat here.

Dupsky argues that when Jensen was being arraigned and told of "certain constitutional and statutory rights," the court did not tell Jensen about his right against self-incrimination in a trial. Dupsky notes that when he was arraigned, the court failed to supplement the advisement from Jensen's arraignment in any way so as to provide advice about the right against self-incrimination in a trial.

■ At the outset, it is clear that group arraignments such as occurred here (even though the group was apparently only two) are acceptable, see *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997), so long as the record affirmatively discloses that the criminal defendant was present when the court advised those charged of their rights. In *State v. Miller*, 225 Neb. 269, 404 N.W.2d 45 (1987), the court said that the record must affirmatively establish that the defendant was indeed present throughout the group arraignment, which fulfills the requirements for taking a valid no contest plea. Dupsky acknowledged on the record that he was present when Jensen received his advisement of rights and that he had heard and understood the rights advisory.

Thus, the "group arraignment," by itself, is not a problem. However, when the trial court was advising Jensen of his constitutional rights with respect to a trial, which then became the rights advisory received by Dupsky, there was no mention whatsoever of a defendant's privilege against self-incrimination. The only time self-incrimination was mentioned in the arraignment of either Jensen or Dupsky was at the very beginning of each arraignment. When the record of both arraignments is read, it is apparent that the trial court, whether intentionally or not,

separated self-incrimination during arraignment from those rights which the defendant would have at a trial. This was done by advising the defendant only about the Fifth Amendment in the context of the questions the court was preparing to ask during the arraignment. And, the right against self-incrimination was never mentioned again, and certainly not in the context of how a trial would be conducted.

■ *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), requires that in order to support a finding that a guilty or no contest plea was freely, intelligently, voluntarily, and understandingly made, the court must have informed the defendant as to (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. Additionally, the court must examine the defendant to ensure that he or she understands the foregoing rights. *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000). Finally, the record must establish a factual basis for the plea and that the defendant knew the range of penalties for the crime with which he or she was charged. *Id. Buckman* reasons that compliance with the requirements of *Irish* are sufficient to ensure that " 'a plea represents a voluntary and intelligent choice among the alternative courses of action open to a criminal defendant, the ultimate standard by which pleas of guilty or nolo contendere are to be tested.' " *Buckman*, 259 Neb. at 931, 613 N.W.2d at 472, quoting *Irish, supra*.

■ Where the record discloses that the trial court at arraignment failed to advise the defendant of his or her right against self-incrimination, the record does not support a finding that the plea was voluntarily and intelligently entered. *State v. Litzenburg*, 220 Neb. 807, 374 N.W.2d 1 (1985) (failure of trial court to give proper advice found to be plain error). In *State v. Turner*, 221 Neb. 132, 134, 375 N.W.2d 154, 155 (1985), the court said that the record did not clearly show that the defendant had been informed of "her right to remain silent and not testify at trial."

Here, there are two virtually identical arraignments, and the arraignment of Dupsky, who was arraigned second, incorporates by reference the advisement of rights given in the first arraignment. That procedure is not inherently deficient. However, the

format used here is defective because the only advisement about self-incrimination was made solely in the context of the questions the court was about to ask each defendant at arraignment and the advisement was given separate from the rights listed by the trial court, which were applicable at trial, meaning that the privilege against self-incrimination was not mentioned in the context of a trial. Thus, the procedure used by the district court was flawed and does not comply with the requirements in *Irish, supra*. At the most fundamental level, Jensen, whose rights advisory becomes Dupsky's, was never told directly, as he should have been, that if he went to trial, he had a right not to testify.

The essence of the doctrine in *Irish, supra*, is to ensure a free, voluntary, and intelligent choice between alternatives. To ensure that goal, the premise in *Irish* is that there will be full advisement of rights, including the rights that are guaranteed in the event of a trial, which are in turn waived when a plea is entered. After a complete examination of Jensen's and Dupsky's proceedings, we must conclude that the format used by the trial court fails to provide the advisement of constitutional rights required by *Irish*. Thus, we find that the plea was not knowingly, freely, and voluntarily made, requiring that we reverse Dupsky's conviction and vacate his sentence.

We remand the matter to the district court for Red Willow County for further proceedings. Obviously, this result dispenses with any need to discuss Dupsky's claim that the sentence was excessive.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.