IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. BOLDEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LAWRENCE O. BOLDEN, APPELLANT.

Filed February 18, 2025.    No. A-24-226.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Lawrence Bolden, pro se.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Lawrence O. Bolden appeals from the order of the Douglas County District Court denying his motion for postconviction relief without holding an evidentiary hearing. We affirm.

## II. BACKGROUND

### 1. CONVICTION AND SENTENCE

In 2022, Bolden was convicted of second degree murder after he pled no contest to the crime; in exchange for the plea, the State dismissed a charge of use of a deadly weapon (firearm) to commit a felony and a charge of possession of a deadly weapon by a prohibited person. See *State v. Bolden*, No. A-22-264, 2023 WL 2377039 (Neb. App. March 7, 2023) (selected for posting to court website). As set forth in this court's previous opinion, the factual basis for Bolden's plea was provided by the State as follows:

- 1 -

[O]n January 18th of 2021, officers from the Omaha Police Department responded to a shots fired at [a motel] located at [an address on] J Street, here in Omaha, Douglas County.

Upon arrival to that location, officers found the victim, Andrew Brown, suffering from a gunshot wound to the abdomen. The officers also retrieved video of the incident showing the defendant, Mr. Lawrence Bolden, shooting and striking the victim, Andrew Brown.

The defendant subsequently was interviewed at Central Headquarters and admitted to having a firearm and using it to shoot the victim, Andrew Brown. The victim did die, and the official cause of death from the autopsy was the gunshot wound to the abdomen.

All events in Douglas County, Nebraska.

*Id.* at 3 (brackets in original).

Bolden subsequently sought to withdraw his plea of no contest. He alleged that his trial counsel informed him he would receive a 10-year term in prison, which Bolden understood to mean that he would serve 5 years in prison under Nebraska's good-time laws. He also alleged that trial counsel failed to file pretrial motions, failed to follow up on his mental health diagnoses, failed to follow up on surveillance video, informed his family he would get a 10-year sentence, and did not clearly convey the terms of the plea agreement. Bolden also claimed that he would not have accepted the plea agreement if he had known that the statutory minimum sentence for second degree murder was 20 years' imprisonment rather than 10 years' imprisonment (5 years with good time). The district court denied Bolden's motion to withdraw his plea. See *id.*

The district court sentenced Bolden to 40 to 50 years' imprisonment for the second-degree murder conviction. *Id.*

## 2. DIRECT APPEAL

Bolden, with new counsel, filed a direct appeal claiming that there was not a sufficient factual basis to support his plea, his attempt to withdraw his plea should not have been denied, and his sentence was excessive. Bolden also claimed that his trial counsel was ineffective for failing to speak to witnesses, failing to obtain his medical records, failing to offer evidence at the hearing to withdraw his plea, failing to present mitigating information at his sentencing hearing, and "'lead[ing] him to believe he would receive a minimal sentence.'" *Id.* at 4. This court affirmed Bolden's conviction and sentence on direct appeal and found that all of his ineffective assistance of trial counsel claims failed. See *id.*

## 3. POSTCONVICTION

On February 5, 2024, Bolden, pro se, filed a verified motion for postconviction relief. In his motion, Bolden alleged claims of trial court error, and ineffective assistance of trial and appellate counsel. Specifically, Bolden alleged that the trial court did not (1) advise him that he had a constitutional right to a bench trial; (2) establish that his no contest plea and waiver of his constitutional rights were voluntarily, knowingly, intelligently, and understandingly made because he did not declare such, and he did not declare that no threats or promises had been made to him; and (3) hold a "full, fair, and adequate hearing" of the issue of his competency. Bolden alleged that his trial counsel was ineffective because counsel failed to (1) ask the trial court to "follow the

Boykin-Turner rule" before accepting his plea; (2) make the court aware of the fact that the record did not affirmatively disclose that Bolden (a) was advised of his right to a bench trial, (b) entered his plea and waived his constitutional rights voluntarily, and (c) declared that no threats, coercion, or promises had been made to him; and (3) request a competency hearing. And Bolden alleged that his appellate counsel was ineffective for failing to raise on direct appeal (1) the foregoing issues of plain error by the trial court, and (2) the foregoing claims of ineffective assistance of trial counsel.

In its order entered on March 6, 2024, the district court denied Bolden's motion for postconviction relief without an evidentiary hearing. The court found Bolden's claims "were brought up on direct appeal, and addressed and rejected by the court of appeals in their memorandum opinion . . ., and need not be readdressed here." The court also found that, "[a]lthough a waiver of jury trial is allowed in Nebraska, there is no per-se constitutional right to a bench trial," and "no advisement is necessary."

Bolden appeals.

## III. ASSIGNMENT OF ERROR

Bolden assigns that the district court abused its discretion in finding that his motion for postconviction relief should be denied.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *Id.* When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

## V. ANALYSIS

### 1. GENERAL PRINCIPLES OF LAW

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *Id.* Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id.* The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *Id.*

However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only

conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *Id.* The appellate court does not conduct this review sua sponte, however; as with all appeals, the alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court. *Id.* The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions. *Id.*

Generally, a motion for postconviction relief cannot be used to secure review of issues that were or could have been litigated on direct appeal. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lessley, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id*.

In Nebraska, a pro se party is held to the same standards as one who is represented by counsel. *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023).

## 2. TRIAL COURT

In his motion for postconviction relief and in his brief in this appeal, Bolden alleged that the trial court did not (1) advise him that he had a constitutional right to a bench trial; (2) establish that his no contest plea and waiver of his constitutional rights were voluntarily, knowingly, intelligently, and understandingly made because he did not declare such, and he did not declare that no threats or promises had been made to him; and (3) hold a "full, fair, and adequate hearing" of the issue of his competency. However, a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). And plain error cannot be asserted in a postconviction

- 4 -

proceeding to raise claims of error by the trial court. *Id.* Accordingly, Bolden's postconviction relief claims against the trial court are procedurally barred.

### 3. TRIAL COUNSEL

On direct appeal, Bolden, represented by new counsel, claimed that his trial counsel was ineffective because trial counsel (1) failed to speak to witnesses, (2) failed to obtain his medical records, (3) failed to offer evidence at the hearing to withdraw his plea, (4) failed to present mitigating information at his sentencing hearing, and (5) led him to believe he would receive a minimal sentence. This court concluded that all of Bolden's claims of ineffective assistance of trial counsel failed. See *State v. Bolden*, No. A-22-264, 2023 WL 2377039 (Neb. App. March 7, 2023) (selected for posting to court website).

In his motion for postconviction relief and in his brief in this appeal, Bolden alleged that his trial counsel was ineffective because counsel failed to (1) ask the trial court to "follow the Boykin-Turner rule" before accepting his plea (see *State v. Louthan*, 257 Neb. 174, 179, 595 N.W.2d 917, 921 (1999) ("*Boykin-Turner* rule" requires that "'a plea of guilty must not only be intelligent and voluntary to be valid but the record must affirmatively disclose that the defendant entered his plea understandingly and voluntarily'")); (2) make the court aware of the fact that the record did not affirmatively disclose that Bolden (a) was advised of his right to a bench trial, (b) entered his plea and waived his constitutional rights voluntarily, and (c) declared that no threats, coercion, or promises had been made to him; and (3) request a competency hearing. However, as stated previously, a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Allen, supra*. See, also, *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024) (when defendant's trial counsel is different from his or her counsel on direct appeal, defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to defendant or is apparent from record; otherwise, issue will be procedurally barred in subsequent postconviction proceeding). Accordingly, Bolden's postconviction relief claims against his trial counsel are procedurally barred.

### 4. APPELLATE COUNSEL

In contrast, this postconviction proceeding was Bolden's first opportunity to assert that his appellate counsel was ineffective. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id*. Counsel's failure to raise an issue on appeal can be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*. None of the issues raised by Bolden in his postconviction motion would have changed the result of his direct appeal, as discussed next.

In his motion for postconviction relief and in his brief in this appeal, Bolden alleged that his appellate counsel was ineffective for failing to raise on direct appeal (1) the foregoing issues

related to the trial court and (2) the foregoing claims of ineffective assistance of trial counsel. We have grouped those claims into two categories: the plea hearing and competency.

(a) Plea Hearing

Bolden claims that the record failed to establish that his no contest plea and waiver of his constitutional rights were voluntarily, knowingly, intelligently, and understandingly made because he did not declare such, and he did not declare that no threats or promises had been made to him. Bolden also claims that he was not advised of his right to a bench trial. However, Bolden cites us to no authority for his claim that he must explicitly declare that no threats or promises had been made to him, nor does he cite to any authority to support his claim regarding the "right" to a bench trial.

In order to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly, the court must (1) inform the defendant concerning (a) the nature of the charge, (b) the right to assistance of counsel, (c) the right to confront witnesses against the defendant, (d) the right to a jury trial, and (e) the privilege against self-incrimination; and (2) examine the defendant to determine that he or she understands the foregoing. *State v. Mead*, 313 Neb. 892, 987 N.W.2d 271 (2023). Additionally, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged. *Id.* A voluntary and intelligent waiver of the above rights must affirmatively appear from the face of the record. *Id.* Trial courts must ask the defendant whether he or she understands that a plea of guilty or no contest waives the right to confront witnesses, the right to a jury trial, and the privilege against self-incrimination, or the record must otherwise show that the defendant expressly waives those rights. *Id.*

At the plea hearing in this case, the district court addressed Bolden and stated, "Your attorney tells me you want to enter a plea of no contest to the charge in Count 1, which is murder in the second degree," "[i]s that true?" Bolden responded in the affirmative. The following colloquy was also had on the record.

> THE COURT: Before I can accept your plea of no contest I must be satisfied that you fully understand your constitutional rights, that your plea of no contest is made freely, knowingly, intelligently, and voluntarily, and that you're in fact guilty of the charge, so I'm going to ask you some questions. And if there's anything you don't understand, you can ask me or you can step aside and ask [your attorney]. All right?
>
> [Bolden]: Okay.
>
> . . . .
>
> THE COURT: Do you read, write and understand English?
>
> [Bolden]. Yes.
>
> THE COURT: Have you ever been treated for any mental illness or to your knowledge do you now suffer from any mental or emotional disorder?
>
> [Bolden]: Yes.
>
> THE COURT: Can you tell me what that is, sir?
>
> [Bolden]: Schizoaffective, schizophrenia, bipolar, PTSD, depression.
>
> THE COURT: Are you taking any medication for any of those now?
>
> [Bolden]: Currently, no.

THE COURT: Are you thinking clearly here today, sir?

[Bolden]: Yes.

THE COURT: Have you taken any illegal drugs or consumed any alcohol in the past 12 hours?

[Bolden]: No.

THE COURT: You may persist in your plea of not guilty, you may plead not responsible by reason of insanity, no contest, you can stand mute, that is to say nothing and I'll enter a plea of not guilty for you, or you may plead guilty.

Do you understand you still have those options?

[Bolden]: Yes.

THE COURT: Once again, how do you plead to the charge of murder in the second degree?

[Bolden]: No contest.

THE COURT: Before I can accept that plea, I have to advise you that you're giving up certain constitutional rights by entering that plea if it's accepted by the Court.

You have the right to a speedy trial by a jury of 12 persons, who in order to convict you would have to return a unanimous verdict of guilt. . . .

You also have the right to be confronted by all witnesses against you; that is, to see, hear, question, and cross-examine the witnesses who would testify against you at trial.

Also, you have the right to require witnesses to be present at any hearing or trial, by subpoena if necessary if they wouldn't come voluntarily, at no cost to you, and have them testify on your behalf.

If you were to have a trial, the State of Nebraska must prove beyond a reasonable doubt that you committed the offense charged before you could be convicted.

At that trial I would tell the jury that you are presumed innocent, and that presumption remains with you unless and until the State proves you guilty beyond a reasonable doubt.

Further, you cannot be compelled to make any statement or testify against yourself at any hearing or trial, but you may remain silent.

You also have the right to be represented by an attorney at all stages of this criminal proceeding including trial and appeal, and if you can't afford one now or at some time in the future, I'll appoint one for you at no cost to you.

Do you understand your rights as I've explained them to you?

[Bolden]: Yes.

THE COURT: Do you understand that by pleading no contest, if that plea is accepted, you're going to be giving up all those rights except the right to counsel?

[Bolden]: Yes.

THE COURT: If you were to have a trial and you were found guilty, you'd have a right to appeal your conviction to the Nebraska Court of Appeals or the Nebraska Supreme Court. Do you understand that?

[Bolden]: Yes.

THE COURT: The charge to which you're pleading no contest in Count 1 is murder in the second degree. And in order to be guilty of that charge, the State would have to prove

by evidence beyond a reasonable doubt that on or about January 18, 2021, you, here in Douglas County, Nebraska, intentionally but without premeditation caused the death of Andrew Brown.

Do you understand that's what the State would have to prove?

[Bolden]: Yes.

THE COURT: Do you understand the maximum penalty for this charge is life imprisonment?

[Bolden]: Yes, sir.

. . . .

THE COURT: Do you have any questions at this time, Mr. Bolden, or is there anything you don't understand that I've talked to you about?

[Bolden]: No.

The State also provided a factual basis for the plea at the hearing.

The record before us shows that the district court informed Bolden of the nature of the charge, the right to assistance of counsel, the right to confront witnesses against him, the right to a jury trial, and the privilege against self-incrimination; and the court examined Bolden to determine that he understood the foregoing. Additionally, the record established that there was a factual basis for the plea and that Bolden knew the range of penalties for the crime with which he was charged. He also confirmed his understanding that by pleading no contest, he would be "giving up" all the rights explained to him, except for the right to counsel. Accordingly, the record refutes Bolden's claims that his plea of no contest and the waiver of his constitutional rights were not made voluntarily, knowingly, intelligently, and understandingly.

We note that in his motion for postconviction relief, Bolden stated that according to his trial counsel, if Bolden pled guilty or no contest to second degree murder, the State would dismiss the charges of use of a deadly weapon (firearm) to commit a felony and possession of a deadly weapon (firearm) by a prohibited person, would not file additional charges, and would not "file the habitual criminal against me." Bolden claimed, "I was under the belief that I was threaten[ed] by the county attorney that if I don't accept the plea agreement, that additional charges, along with the habitual criminal charge would be filed against me." A threat or promise of illegal action may invalidate a plea, but a threat to prosecute when the facts warrant prosecution is not coercive such that a subsequent plea is involuntary. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

As stated previously, the record refutes Bolden's claims that his plea of no contest and the waiver of his constitutional rights were not made voluntarily, knowingly, intelligently, and understandingly. Accordingly, appellate counsel was not ineffective for failing to raise on direct appeal, the related claims of trial court error or the ineffective assistance of trial counsel.

(b) Competency

Issues related to Bolden's competency were raised and addressed on direct appeal. On direct appeal, Bolden claimed the district court erred in denying his motion to withdraw his plea, in part because he was not receiving his normal medication for his psychological disorders at the time he entered his plea. Bolden also claimed that his trial counsel was ineffective for failing to (1) obtain certain medical records from mental health facilities that had diagnosed and treated him

over the years and (2) offer evidence at the hearing on his motion to withdraw his plea (again referring to medical records). These claims were all rejected. See *State v. Bolden*, No. A-22-264, 2023 WL 2377039 (Neb. App. March 7, 2023) (selected for posting to court website).

During the plea hearing, the following colloquy was had on the record.

THE COURT: Have you even been treated for any mental illness or to your knowledge do you now suffer from any mental or emotional disorder?

[Bolden]: Yes.

THE COURT: Can you tell me what that is, sir?

[Bolden]: Schizoaffective, schizophrenia, bipolar, PTSD, depression.

THE COURT: Are you taking any medication for any of those now?

[Bolden]: Currently, no.

THE COURT: Are you thinking clearly here today, sir?

[Bolden]: Yes.

And at the subsequent hearing on the motion to withdraw Bolden's plea, Bolden's trial counsel stated:

Bolden would like to tell the Court that he's currently not on medication for -- he's saying he's having auditory and visual hallucinations. I don't have any evidence of that from the jail. I have his word. They're trying to find new medications for him at the jail.

I'll inform the Court we did have him evaluated by our office, and had that been an issue, we would have filed the appropriate notices and motions with the Court.

Bolden then personally informed the court that he had signed a release of information for medical records for his attorney and had "been seeing the mental health in the Douglas County since I've been there, and they have been aware fully of my side effects behind my mental health." Bolden also stated that he was told that stress can make his video and audio hallucinations worse, but he was not currently taking medications because "I have a lot of allergies to medications."

On direct appeal, this court said, "There is nothing in the record before us to suggest that the district court should have had a reason to doubt Bolden's competence to enter a plea." *State v. Bolden, supra* at 7. As to trial counsel's failure to obtain medical records and offer evidence at the motion to withdraw hearing, we noted that the district court was aware of Bolden's diagnoses, "which [were] addressed at the plea and sentencing hearings, as well as in a substance use and mental health evaluation contained in the PSR." *Id.* at 12. "We fail to see how obtaining the alleged medical records represents deficient performance by trial counsel, but even [if] it was, we fail to see how such records would have caused Bolden to insist on going to trial rather than entering a plea." *Id.*

Bolden now attempts to relitigate the competency issue. However, a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). Even if the competency claim was not procedurally barred, it is affirmatively refuted by the record. See *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020) (if proceedings do not provide court with reason to doubt defendant's competence, it does not err by not conducting competency hearing; person is competent to plead or stand trial if he or she has capacity to understand nature and object of

proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make rational defense). At the plea hearing, Bolden confirmed that he was thinking clearly that day. There is evidence that he underwent some sort of evaluation through his trial counsel, and trial counsel did not determine that a competency hearing was required. And Bolden has failed to tie his mental health diagnoses to any lack of competency at the time of the plea hearing.

Appellate counsel was not ineffective for failing to raise on direct appeal, the claims of trial court error or ineffective assistance of trial counsel related to his competency claims.

## VI. CONCLUSION

For the reasons stated above, we affirm the district court's decision to deny Bolden's motion for postconviction relief without holding an evidentiary hearing.

AFFIRMED.